UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KARI WILDEBOER,                  File No. 1:24-CV-

    Plaintiff,                        Hon.

v.

TRINITY HEALTH MUSKEGON
HOSPITAL,

    Defendant.

_____

# COMPLAINT AND JURY DEMAND

_____

### Complaint

Plaintiff Kari Wildeboer, by and through her attorneys, Pinsky Smith, PC, states as follows:

### Jurisdiction, Venue, and Parties

1. This is an action seeking to remedy violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and related violations of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1011 *et seq.*

2. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

1

3. Plaintiff Kari Wildeboer is a resident of Kent County, Michigan. Plaintiff was employed by Defendant in its medical lab until Defendant terminated Plaintiff's employment on or about August 21, 2023.

4. Defendant Trinity Health Muskegon Hospital (THMU) is a hospital in Muskegon County and is part of the Trinity Health system. Defendant is an employer within the meaning of the ADA and the PWDCRA.

5. The acts that are the subject of this action occurred in Muskegon County in the Western District of Michigan.

6. Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

## Factual Allegations

7. Plaintiff is a Medical Lab Technician certified through the American Society for Clinical Pathology.

8. Plaintiff suffers from a severe latex allergy. Plaintiff has an airborne form of this allergy, which means that she can have an allergic reaction if latex particles in the air contact her skin. Plaintiff's latex allergy is well-documented in her medical records.

9. In October 2019, Defendant hired Plaintiff to work in its lab. During the hiring process, Plaintiff informed Defendant of her latex allergy. Defendant assured Plaintiff that it could accommodate her need for a latex-safe work environment.

10. During the first half of 2020, Plaintiff had repeated anaphylactic reactions at work because she was forced to walk through a construction zone where latex was used.

11. In June 2020, Plaintiff visited Dr. Melissa Koekkoek, a doctor with THMU's Workplace Health, following an anaphylactic episode. Dr. Koekkoek advised Plaintiff to wear a half-mask respirator outside the lab when she was in the construction zone.

12. Although Dr. Koekkoek cleared Plaintiff to return to work, Defendant terminated Plaintiff the following day for the alleged, incorrect reason that Plaintiff could not work safely in Defendant's workplace because of Plaintiff's allergy. Plaintiff filed a grievance with her union, and Defendant ultimately allowed Plaintiff to return to the lab after several months of negotiations.

13. When Plaintiff returned to work in October 2020, Defendant had completed renovation of its Muskegon hospital. The newly-renovated space had latex-free equipment, and Defendant posted signs identifying Plaintiff's workspace as a latex-free zone. With those precautions in place, Plaintiff was able to work largely without incident until March 2023.

14. In March 2023, Plaintiff had four anaphylactic reactions as a result of another employee wearing Converse All-Star sneakers in Plaintiff's workspace. Unlike most sneakers, which are made with synthetic rubber and are latex-free, Converse All-Star sneakers are made with natural latex rubber. Plaintiff was

forced to take several weeks of FMLA leave to recover from the anaphylactic episodes.

15. While Plaintiff was on FMLA leave, Plaintiff's union representative asked the director of the lab, Phil Hynes, to request that staff refrain from wearing Converse All-Star sneakers at work. Mr. Hynes had previously asked staff to refrain from wearing perfume and cologne at work because it caused a staff member to have headaches. Nonetheless, Mr. Hynes denied the request and suggested instead that Plaintiff try intentional latex exposure to increase her immunity. Mr. Hynes is not a doctor, and his suggestion ran counter to the medical advice Plaintiff has received from her providers, who have emphasized the need for her to avoid exposure to latex.

16. Following her unsuccessful attempt to resolve the issue with her supervisor, Plaintiff submitted a reasonable accommodation request under the ADA. Plaintiff requested that Defendant provide her with a latex-safe environment, including signage indicating that certain items could not be present in Plaintiff's work area, and to enforce a rule prohibiting latex from the lab workspace.

17. On May 9, 2023, Defendant denied Plaintiff's request for a reasonable accommodation without engaging in the interactive process. Defendant did not provide an explanation for its decision, except for a generic statement that Plaintiff's request was unreasonable or would cause undue hardship.

18. Following Defendant's denial of her reasonable accommodation request, Plaintiff filed a grievance through her union. Defendant denied Plaintiff's

4

grievance request on the alleged grounds that she refused to wear a respirator. In fact, Defendant has never provided Plaintiff with a respirator or even suggested that Plaintiff wear a respirator in the lab or anywhere else at the new facility. The only discussion Plaintiff ever had about a respirator was in 2020, when Plaintiff was working at the old facility. At that time, Dr. Koekkoek said that Plaintiff should wear a respirator outside the lab to avoid exposure in the construction zone. Plaintiff followed Dr. Koekkoek's instructions and has never refused an instruction to wear a respirator.

19. Plaintiff is unable to wear a respirator inside the lab because it interferes with her ability to perform her job duties.

20. During this time period, Plaintiff continued to have anaphylactic reactions from latex exposure due to employees wearing Converse All-Star sneakers in her workspace, and she continued to take FMLA leave to recover from these reactions. After one period of leave, Plaintiff returned to discover that the signs warning about her latex allergy, which Dr. Koekkoek had requested be placed outside the lab, had been removed.

21. On August 21, 2023, Defendant notified Plaintiff that she could not return to work at the lab until she received clearance from Defendant's employee health department.

22. On August 23, 2023, Plaintiff met with Dr. Koekkoek, the same doctor she had seen in 2020. Dr. Koekkoek concluded that Plaintiff could not perform her essential job functions because Defendant did not grant her accommodation

5

requests. Defendant said it refused to allow Plaintiff to return to work based on Dr. Koekkoek's evaluation.

23. Over the following weeks, Plaintiff and her union representative engaged in negotiations with Defendant. On September 26, 2023, Anathea Collar, the head of Defendant's Human Resources Department, sent Plaintiff an email notifying her that Defendant had agreed to provide four out of five of Plaintiff's requested accommodations. In particular, Ms. Collar stated that Defendant agreed to (1) post allergy signs; (2) post a list of things containing high amounts of latex, including Converse and Converse-like rubber shoes; (3) permit Plaintiff to avoid the blood bank; and (4) provide an orientation plan for the department that includes education on latex allergies.

24. Ms. Collar said that Defendant would not institute a policy prohibiting All Star Converse tennis shoes for lab workers because such policy was "not currently in place and it would be prohibitive for Trinity Health to put such a policy in place." In fact, a lab safety review presentation from August 23, 2023, stated: "Closed toed shoes and socks must always be worn in the lab; shoes should not be canvas or mesh." Plaintiff had based her request on what she understood to be current lab safety protocol described in that presentation. Nonetheless, Plaintiff agreed to Defendant's proposal and conveyed that to Ms. Collar.

25. As soon as Plaintiff began inquiring when she could return to work, however, Ms. Collar reversed course. Ms. Collar then said that Plaintiff could not return to work because Defendant could not guarantee a latex-free environment. In

fact, Plaintiff has never requested a latex-free environment, since she knows that Defendant cannot guarantee that, but has only requested a latex-safe environment.

26. Following Defendant's reversal of its decision to grant Plaintiff's accommodations, Plaintiff requested mediation through her union.

27. Prior to attending mediation, Plaintiff provided Defendant with a letter from her treating physician, Dr. Mark Millar, an allergy specialist. Dr. Millar concluded that it would be safe for Plaintiff to return to work as long as Defendant prevented obvious latex exposure. Dr. Millar further opined that Plaintiff could work safely with the signs that Plaintiff had requested.

28. On October 10, 2023, the parties attended mediation and reached an agreement that reflected the terms laid out in Ms. Collar's September 26, 2023 email. The parties further agreed that a supervisor would ask any employee that wore Converse All-Star sneakers into the lab to wear surgical booties. Ms. Collar asked Plaintiff to send her an email listing the terms of the agreement, which Plaintiff did. Ms. Collar did not respond to Plaintiff's email, however, and Defendant still did not permit Plaintiff to return to work.

29. After agreeing to Plaintiff's requested accommodations at the mediation, Defendant again reversed course. This time, Defendant asserted that Plaintiff could not return to work without clearance from Dr. Koekkoek.

30. Plaintiff and her union representative reached out to Dr. Koekkoek to inquire as to how Plaintiff could get approval to return to work. Dr. Koekkoek said that she could not clear Plaintiff to return to work because Defendant had not

7

approved her accommodations. When Plaintiff and her union representative informed Dr. Koekkoek that Defendant had in fact agreed to the accommodations, Dr. Koekkoek responded that nothing had been communicated to her about Plaintiff's reasonable accommodation requests since April – when Plaintiff's reasonable accommodation request was initially denied.

31. Dr. Koekkoek encouraged Plaintiff to work with her treating doctor to find accommodations that would make the workplace safe, apparently unaware that Plaintiff had submitted a letter from Dr. Millar.

32. Dr. Koekkoek told Plaintiff that she could not assist with the process and refused to engage further, stating that she could not provide any further advisement.

33. Defendant placed Plaintiff in an impossible situation; Defendant could only return to work with approval from Dr. Koekkoek, but Dr. Koekkoek refused to engage with Plaintiff or consider any new information about the safety of her workspace.

34. In an attempt to break the logjam, Plaintiff suggested that the parties agree on an independent doctor to provide an opinion. The parties agreed that Plaintiff would see Dr. Thomas Miller, an allergy specialist.

35. On November 16, 2023, Dr. Miller provided Defendant with a letter stating his opinion that Plaintiff could safely return to work if Defendant made reasonable accommodations to minimize Plaintiff's latex exposure, which could be as little as posting signs in Plaintiff's work environment. Dr. Miller recognized that

Defendant could not guarantee a latex-free environment, but expressed his opinion that Plaintiff could do her job safely nonetheless.

36. Despite agreeing to an examination by Dr. Miller, Defendant appeared to give his opinion no weight. Although Defendant received opinions from two different allergy specialists stating that Plaintiff could return to work safely—including the allergy specialist that Defendant agreed to—Defendant refused to allow Plaintiff to return to work.

37. Plaintiff continued to inquire as to what actions she could take to return to her job, with no success. In early January, after giving Plaintiff the runaround for months, Ms. Collar told Plaintiff that she would not be allowed to return to the lab but that she could apply for other jobs with Defendant. Ms. Collar did not specify which jobs Defendant believed Plaintiff could safely perform, despite Plaintiff's inquiries.

38. Despite Plaintiff's significant efforts to demonstrate that she could perform her lab duties safely, she was never permitted to return to her job after August 21, 2023, when Defendant ordered her to undergo an evaluation with Dr. Koekkoek.

### Count I – Violation of the ADA

39. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

40. Plaintiff's latex allergy qualifies as a disability under the ADA, 42 U.S.C § 12102.

41. Plaintiff is a "qualified individual" as defined by the ADA, § 42 U.S.C. 12111(8), as she could perform the essential functions of her job with reasonable accommodation.

42. Defendant is an employer and a covered entity as defined by the ADA, 42 U.S.C. § 12111(2); § 12111(5).

43. Defendant violated the ADA when it refused to grant Plaintiff's request for a reasonable accommodation that would allow her to perform her job duties in a safe manner. Plaintiff's requested changes were minimal and did not impose an undue hardship on Defendant.

44. Defendant discriminated against Plaintiff by refusing to allow her to return to her job in the lab.

45. By refusing to allow Plaintiff to return to her job as a lab technician because of her latex allergy, Defendant discharged Plaintiff from her employment because of her disability.

46. Defendant's actions violated the ADA and caused Plaintiff to suffer damages for which Defendant is liable.

47. As a result of the foregoing, Plaintiff has lost earnings and benefits and incurred mental anguish, emotional distress, unfair reputational damage, and legal costs for which Defendant is liable.

48. Plaintiff has met all statutory prerequisites for this Claim by filing a charge with Equal Employment Opportunity Commission, and by EEOC issuing Plaintiff a Right-To-Sue Letter dated April 10, 2024.

WHEREFORE, Plaintiff requests that the Court award Plaintiff economic and compensatory damages in an amount that would fully compensate her for the injuries alleged herein, costs and reasonable attorney fees, and such other relief as may be just and equitable.

### Count II – Violation of Michigan's PWDCRA

49. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

50. Plaintiff's latex allergy is a disability as defined by the PWDCRA, Mich. Comp. Laws § 37.1103(d).

51. Defendant was an employer, as defined by the PWDCRA, Mich. Comp. Laws § 37.1201(b).

52. Defendant discriminated against Plaintiff when it failed to accommodate Plaintiff by providing a latex-safe work environment.

53. Plaintiff's requested accommodations did not impose an undue hardship upon Defendant, as defined by Mich. Comp. Law § 37.1210.

54. Defendant discharged Plaintiff when it refused to allow her to return to her job in the lab.

55. Defendant's actions violated the PWDCRA and caused Plaintiff to suffer damages for which Defendant is liable.

56. As a result of the foregoing, Plaintiff has lost earnings and benefits and incurred mental anguish, emotional distress, unfair reputational damage, and legal costs for which Defendant is liable.

WHEREFORE, Plaintiff requests that the Court award Plaintiff economic and compensatory damages in an amount that would fully compensate her for the injuries alleged herein, costs and reasonable attorney fees, and such other relief as may be just and equitable.

                                                PINSKY SMITH, PC
                                                Attorneys for Plaintiff

Dated: May 10, 2024                  By:/s/ *Sarah R. Howard*

                                                Sarah Riley Howard
                                                Elizabeth L. Geary
                                                146 Monroe Center St NW, Suite 418
                                                Grand Rapids, MI  49503
                                                (616) 451-8496

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

                                  PINSKY SMITH, PC
                                  Attorneys for Plaintiff

Dated: May 10, 2024                      By:/s/ *Sarah R. Howard*

                                  Sarah Riley Howard
                                  Elizabeth L. Geary
                                  146 Monroe Center St NW, Suite 418
                                  Grand Rapids, MI  49503
                                  (616) 451-8496